1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SARAH JANE THOMAS,                    Case No.  1:24-cv-00192-JLT-HBK

12              Plaintiff,                 FINDINGS AND RECOMMENDATIONS TO
                                           GRANT PLAINTIFF'S MOTION FOR
13       v.                                SUMMARY JUDGMENT, DENY
                                           DEFENDANT'S CROSS-MOTION FOR
14   MARTIN O'MALLEY,                      SUMMARY JUDGMENT, AND REMAND
     COMMISSIONER OF SOCIAL                CASE TO THE COMMISSIONER OF
15   SECURITY,[1]                          SOCIAL SECURITY [2]

16              Defendant.                 FOURTEEN-DAY OBJECTION PERIOD

17                                         (Doc. Nos. 14, 16)

18

19       Sarah Jane Thomas ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") ceasing her supplemental

21   security income under the Social Security Act.  (Doc. No. 1).  The matter is currently before the

22   Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos. 14, 16-17).

23   For the reasons set forth more fully below, the undersigned recommends the district court grant

24   Plaintiff's motion for summary judgment, deny Defendant's cross-motion for summary judgment,

25

26   [1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social
     Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
27   [2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).
28

and remand for further administrative proceedings.

## I.      JURISDICTION

In a decision dated January 1, 2001, benefits were awarded to Plaintiff as of June 1, 1992. (AR 17).  After periodic review, disability was subsequently determined to have continued in a determination dated September 16, 2003. (AR 17).  On May 18, 2018, after another periodic review, it was determined that Plaintiff was no longer disabled as of May 22, 2018.  (AR 61-74). After a hearing by a state agency hearing office, the decision was upheld on January 18, 2019. (AR 102-25).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 126-29).  A hearing was scheduled for April 21, 2020, but was postponed by the ALJ.  (AR 150). A telephonic hearing was then scheduled for March 30, 2021, but Plaintiff hung up on the ALJ multiple times and refused to appear.  (AR 191, 405).  Subsequently, after denying counsel's requests to continue the hearing because he lost contact with Plaintiff (AR 411-13), a hearing was held on December 15, 2022.  (AR 37-60).  Plaintiff was represented by counsel, but she did not appear at the hearing.  (*Id*.).  On December 20, 2022, Plaintiff was issued a Notice to Show Cause for failure to appear at the hearing.  (AR 260).  Plaintiff responded that she did not appear at the hearing because she was "very ill for a while," and she had a change of address and therefore did not receive the hearing notice.  (AR 264).

On February 22, 2023, the ALJ found Plaintiff's disability ended on May 22, 2018, and found there was no good cause for Plaintiff's failure to appear at the hearing.  (AR 14-36).  On December 7, 2023, the Appeals Council denied review.  (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.      BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 45 years old at the time of the hearing.  (*See* AR 304).  The highest level of school she completed was eighth or ninth grade.  (AR 55).  Plaintiff has no past relevant work history.  (AR 54-55).  At the time of the comparison point decision she lived with her mother and

brother.  (AR 110).  The disability hearing officer summarized her testimony in May 2018 as claiming she is unable to work due to bipolar disorder, anxiety, dementia, and joint pain.  (*Id*.). She reported she does not get along with people, she has anxiety attacks twice a day, lower back pain from the bullet lodged in her spine, and joint pain throughout her body.  (*Id*.).

### III.     STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.     SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability has ended.  20 C.F.R. §§ 404.1594(f), 416.994(b)(5). This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has

3

been medical improvement.  Compare 20 C.F.R. § 404.1520 and 416.920 with § 404.1594(f) and 416.994(b)(5), respectively.  A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Determination of whether a person's eligibility has ended for disability benefits involves an eight-step process under Title II and a seven-step process under Title XVI.  20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii).  The Title XVI process is identical to the Title II process, except for the consideration of substantial gainful activity at the beginning of the disability insurance process and not during the Title XVI process.  These otherwise identical steps are broadly summarized as follows.

The first step determines whether the claimant has an impairment or combination of impairments that meet or equal the severity of listed impairments set forth at 20 C.F.R. pt. 404, subpt. P, app. 1.  20 C.F.R. §§ 416.920(d), 416.994(b)(5)(i).  If the impairment does not equal a listed impairment, the second step addresses whether there has been medical improvement in the claimant's condition.  20 C.F.R. § 416.994(b)(5)(ii).  Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled.  20 C.F.R. § 416.994(b)(1)(i).  If there has been medical improvement, at step three, a determination is made whether such improvement is related to the claimant's ability to perform work—that is, whether there has been an increase in the individual's residual functional capacity.  20 C.F.R. § 416.994(b)(iii).  If the answer to step three is yes, the Commissioner skips to step five and inquires whether all of the claimant's current impairments in combination are severe.

If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step four.  At step four, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased.  20 C.F.R. § 416.994(b)(5)(iv).  At step five, if medical improvement is shown to be related to the claimant's ability to work, a determination will be

made to assess whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on his physical or mental ability to perform basic work activities.  20 C.F.R. § 416.994(b)(5)(v).  If the answer to that inquiry is yes, at step six the ALJ must determine whether the claimant can perform past relevant work.  20 C.F.R. §§ 416.994(b)(5)(vi), 416.920(e); SSR 82-61, available at 1982 WL 31387.

Finally, at step seven, if the claimant cannot perform past relevant work, a limited burden of production shifts to the Commissioner to prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity.  20 C.F.R. § 416.994(b)(5)(vii).  If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement; if, however, he can perform a significant number of other jobs, disability ceases.  *Id*.

Prior to the final step, the burden to prove disability and continuing entitlement to disability benefits is on the claimant.  20 C.F.R. § 416.994; *cf. Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner must consider all evidence without regard to prior findings and there must be substantial evidence that medical improvement has occurred.  42 U.S.C. §§ 423(f)(1), 1382c(a)(4).  The Commissioner views the evidence in a continuing disability review from a neutral perspective, without any initial inference as to the existence of disability being drawn from a prior finding of disability.  42 U.S.C. §§ 423(f)(1), 1382c(a)(4).  If the analysis proceeds to step seven, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  *Cf. Bowen v. Yuckert*, 482 U.S. at 146 n. 5; and *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (applying the same burden at the initial disability determination).

## V.     ALJ'S FINDINGS

Initially, the ALJ found that Plaintiff had the following medically determinable impairments at the time of the comparison point decision (CPD)[3] on September 16, 2003: status post abdominal gunshot wound, bipolar disorder, depression, and anxiety.  (AR 19).  The ALJ

---

[3] As noted by the ALJ, the comparison point decision is the most recent favorable medical decision finding Plaintiff was disabled.  Here, that determination was dated September 16, 2003.  (AR 19).

1    additionally noted that since September 16, 2003, Plaintiff had the following medically

2    determinable impairments: status post abdominal gunshot wound, degenerative disc disorder

3    (DDD) of the cervical spine, obesity, bipolar disorder, depression, and anxiety.  (AR 19).  At step

4    one, the ALJ found that since May 22, 2018, Plaintiff has not had an impairment or combination

5    of impairments that meets or medically equals the severity of one of the listed impairments in 20

6    C.F.R. Part 404, Subpt. P, App'x 1.  (AR 19).  At step two, the ALJ found medical improvement

7    occurred as of May 22, 2018.  (AR 21).  At step three, the ALJ found Plaintiff's medical

8    improvement was related to her ability to work because it has resulted in an increase in Plaintiff's

9    RFC.  (AR 22).  Thus, the ALJ skipped to step five and found that beginning on May 22, 2018,

10   Plaintiff has the severe impairments of status post gunshot wound to the abdomen, DDD of the

11   cervical spine, obesity, bipolar disorder, depression, and anxiety.  (AR 22).  At step six, the ALJ

12   found that, beginning on May 1, 2016, Plaintiff had the RFC to

> perform medium work as defined in 20 CFR 416.967(c) except the claimant requires work that entails routine repetitive tasks and simple decision making.  She requires work that is occasionally in close proximity to coworkers and supervisors, and she should have minimal to no direct contact with the general public.  The claimant could only lift or carry up to 25 pounds frequently and 50 pounds occasionally.  She can stand or walk with normal breaks for a total of six hours in an eight-hour workday.  She can sit with normal breaks for a total of six hours in an eight-hour workday.  She can perform pushing and pulling motions with the upper and lower extremities within the weight restrictions given.  The claimant can perform postural activities frequently, and those would be climbing of ramps or stairs, balancing, stooping, crouching, kneeling, and crawling.  She can climb ladders, ropes, or scaffolds, but is limited to only frequent.  With the left upper extremity, forward reaching, overhead reaching, and handling is limited only to frequent.

22   (AR 23).  The ALJ then determined that Plaintiff has no past relevant work.  (AR 29).  Finally, at

23   step seven, the ALJ found that since May 22, 2018, considering Plaintiff's age, education, work

24   experience, and RFC, there are jobs that exist in significant numbers in the national economy that

25   Plaintiff can perform including warehouse worker, housekeeping cleaner, and routing clerk.  (AR

26   29-30).  On that basis, the ALJ concluded that Plaintiff's disability ended on May 22, 2018, and

27   Plaintiff has not become disabled again since that date.  (AR 30).

28   ////

## IV.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision ceasing her supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1.   Whether the ALJ erred by denying Plaintiff's request for a supplemental hearing after finding no good cause for her failure to appear;

2.   Whether the ALJ erred in assessing the RFC; and

3.   Whether the ALJ's finding of medical improvement was supported by substantial evidence.

(Doc. No. 14-1 at 3-7).

## VI.    DISCUSSION

### A.  Medical Improvement

Disability benefits may be terminated if substantial evidence demonstrates "(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity."  42 U.S.C. § 423(f)(1). Medical improvement is defined as "any decrease in the medical severity" of an impairment which was present at the time of the most recent favorable medical decision.  20 C.F.R. § 416.994(b)(1)(i).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)."  20 C.F.R. § 416.994(b)(1)(i).  Thus, in determining whether a claimant has medically improved and is no longer disabled, the ALJ is required to compare the current medical severity of the claimant's impairment(s) to the medical severity of the impairment(s) "present at the time of the most recent favorable medical decision," i.e., the comparison point decision.  20 C.F.R. § 416.994(b)(7).  "Congress enacted the medical improvement standard as a safeguard against the arbitrary termination of benefits."  *Attmore v. Colvin*, 827 F.3d 872, 876 (9th Cir. 2016).

Plaintiff argues the ALJ's finding of medical improvement is not supported by substantial

7

1   evidence sufficient to overcome the presumption of disability that she is entitled to on continuing

2   disability review.  (Doc. No. 14-1 at 5).  Initially, as correctly identified by Defendant, the most

3   recent Ninth Circuit law clarifies that there is no presumption of continuing disability under the

4   Social Security Act.  *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) ("a disability

5   determination must be made 'on a neutral basis with regard to the individual's condition, without

6   any initial inference as to the presence or absence of disability being drawn from the fact that the

7   individual has previously been determined to be disabled.'") (quoting 42 U.S.C. § 423(f)).

8   However, an ALJ's decision regarding medical improvement must still be supported by

9   substantial evidence.  *Attmore*, 827 F.3d at 874; *see also Graham v. Comm'r of Soc. Sec. Admin.*,

10   2024 WL 3862280, at *3 (D. Ariz. July 3, 2024) (noting there is no presumption of continuing

11   disability, "[h]owever, in the context of a case wherein the claimant was previously found

12   disabled, the Commissioner bears the burden of showing the claimant is no longer disabled based

13   on medical improvement; this burden is met when there is substantial evidence supporting such a

14   conclusion.").

15        Here, at step two of the sequential analysis, the ALJ found medical improvement occurred

16   on May 22, 2018.  (AR 21).  As to her claimed mental impairments, the ALJ found they "are no

17   longer disabling given [Plaintiff's] generally unremarkable mental status findings, as well as her

18   [sic] the general lack of information in the medical records generally.  She has only engaged in

19   sporadic, conservative mental health treatment, resulting in improvement in her [RFC]."  (AR

20   21).  The ALJ generally indicated that the evidence supporting this finding was "discussed in

21   further detail" later in the decision.  (*Id*.).

22        Plaintiff argues the ALJ failed to properly compare the medical evidence at the time of the

23   comparison point decision in September 2003 with medical evidence at the time of appeal, as

24   required under the regulations.  *See* 20 C.F.R. § 416.994(b)(7).  The Court agrees.  In support of

25   her finding, the ALJ cited mental status findings that Plaintiff was cooperative, had appropriate

26   mood and affect, had logical thought process and content, full affect, average intelligence, and

27   euthymic mood; as well as observations that Plaintiff had depressed and anxious mood, flat

28   affect, reported she was unable to stop crying, impaired attention and concentration, was

1    "disheveled and in mild distress," and reported auditory and visual hallucinations and self-

2    harming behaviors.  (AR 26-27 (citing AR 485, 531, 605 (observed yelling back and forth with

3    her mother), 644-48, 655 (non-compliant with treatment and follow-ups), 656 (summary of

4    progress was "minimal")).  The ALJ also recounted in detail a January 2018 consultative

5    examination during which Plaintiff indicated she was unable to answer questions and referred the

6    examiner to her mother to answer questions for her, resulting in an inability for the examiner to

7    evaluate her content of thought, mood and affect, intellectual functioning, and judgment and

8    insight.  (AR 472-76).  Defendant argues it was reasonable for the ALJ to find Plaintiff was no

9    longer disabled based on these "generally unremarkable mental status examination findings;" and

10   the ALJ "rationally found Plaintiff's lack of cooperation with psychological consultative

11   examination testing detracted from her claim of continued disability."  (Doc. No. 16 at 13 (citing

12   *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (discrediting plaintiff's testimony in

13   part based on her lack of cooperation during consultative examinations)).

14          Regardless, the ALJ's findings rely entirely on current mental status examinations without

15   any comparison with evidence at the time of the comparison point decision in 2003.  (*See* AR 21,

16   26-27).  Of particular note here, while not referenced in the ALJ's decision, the Court's review of

17   the 2003 comparison point decision evidence in the record indicates Plaintiff had a history of

18   depression, comprehension problems, impaired concentration, impaired insight and judgment,

19   was crying during the examination, reported auditory and visual hallucinations, reported self-

20   harm, and "most of the history" was obtained from Plaintiff's mother with just a "few answers"

21   from Plaintiff who generally refused to answer questions.  (AR 422-37).  Similarly, while not

22   cited by the ALJ, current medical records observe Plaintiff crying and/or yelling during treatment

23   visits, refusing to answer questions upon examination, and diagnosis of severe depression on

24   screening; as well as notations of depressive thought content, lack of insight into

25   "behavior/illness/symptoms," poor insight and judgment, and "minimal progress."  (AR 479, 554-

26   55, 605, 644-57).  The ALJ fails to assess how these "signs, symptoms and laboratory findings"

27   compared to the earlier CPD evidence that appears to reflect similar mental status examination

28   findings and refusal to answer questions, nor does the ALJ identify any specific improvement

1   between the comparison point decision and current medical evidence.  *See Wahwassuck v. Astrue*,

2   2008 WL 818262, at *4 (D. Idaho Mar. 24, 2008) ("In determining whether a medical

3   improvement has occurred, the ALJ must identify specific medial evidence."); *Medina v. Colvin*,

4   2015 WL 5448498, at *12 (N.D. Cal. Aug. 21, 2015) ("the Act does not authorize an ALJ to find

5   medical improvement without making the comparison of prior and current medical evidence.").

6        Finally, in support of the medical improvement finding, the ALJ appears to rely heavily

7   on the lack of mental health treatment in the current record, including a "lack of corroborating

8   evidence to support the alleged severity of symptoms" and only "sporadic and conservative

9   mental health treatment resulting in an improvement" in Plaintiff's RFC.  (AR 21, 26).

10  Defendant correctly notes that an ALJ may consider plaintiff's unexplained failure to seek or

11  comply with treatment as a basis to discount symptom claims.  (Doc. No. 16 at 12-13); *see Orn v.*

12  *Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  However, as argued by Plaintiff, courts in the Ninth

13  Circuit have "criticized the use of a lack of treatment to reject mental complaints both because

14  mental illness is notoriously underreported and because 'it is a questionable practice to chastise

15  one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

16  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); (Doc. No.

17  14-1 at 6 (citing *Nguyen v. Charter*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  Regardless, as in this

18  case, "a lack of treatment … do[es] not satisfy the Commissioner's burden of showing medical

19  improvement, particularly where the ALJ fails to undertake the necessary comparison of prior and

20  current medical evidence."  *Lape v. Comm'r Soc. Sec. Admin.*, 2017 WL 1430613, at *4 (D. Or.

21  Apr. 20, 2017); *see also Medina*, 2015 WL 5448498, at *8 (holding conservative treatment and

22  examination results in the current record cannot support a finding of medical improvement

23  without proper comparative analysis by the ALJ).

24       Based on the foregoing, the Court finds the ALJ's finding of medical improvement is not

25  supported by substantial evidence and must be reevaluated on remand.

26       **B.  Additional Assignments of Error**

27       Plaintiff additionally rasies to other issues for the Court to consider:  (1) the ALJ erred in

28  assessing the RFC; and  (2) the ALJ erred in finding no good cause to hold an additional hearing

1  for Plaintiff to testify.  (Doc. No. 14-1 at 3-5).  In light of the need to remand to reconsider the

2  finding at step two of the seven-step sequential analysis for determining if Plaintiff's disability

3  ceased, the Court declines to address these challenges here.  On remand, the ALJ is instructed to

4  conduct a new sequential analysis considering all of the evidence in the record, including a

5  reassessment of the RFC and step five finding if necessary.

6      **C.  Remedy**

7          Plaintiff argues the Court should remand for payment of benefits, or in the alternative for

8  further proceedings.  (Doc. No. 14-1 at 6-7).  The decision whether to remand for further

9  proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister*

10  *v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

11  where "no useful purpose would be served by further administrative proceedings, or where the

12  record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs*., 859 F.2d

13  1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly

14  burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759

15  F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when

16  all of these conditions are met).  This policy is based on the "need to expedite disability claims."

17  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a

18  determination can be made, and it is not clear from the record that the ALJ would be required to

19  find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See*

20  *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172,

21  1179-80 (9th Cir. 2000).

22          The undersigned recommends the case be remanded for further proceedings.  *See*

23  *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for

24  benefits is not appropriate when further administrative proceedings would serve a useful

25  purpose).  Here, the ALJ improperly considered medical improvement, which calls into question

26  the subsequent steps of the sequential analysis including whether the assessed RFC and step five

27  findings are supported by substantial evidence.  "Where," as here, "there is conflicting evidence,

28  and not all essential factual issues have been resolved, a remand for an award of benefits is

inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate medical improvement. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

        Accordingly, it is **RECOMMENDED**:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 14) be GRANTED.

2.      Defendant's Cross Motion for Summary Judgment (Doc. No. 16) be DENIED.

3.      Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order and direct the Clerk to enter judgment in favor of the Plaintiff and close this case.

## <u>NOTICE TO PARTIES</u>

        These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    November 7, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

12